OCTOBER 19, 1968.

No. 647. HADNOTT ET AL. *v.* AMOS, SECRETARY OF STATE OF ALABAMA, ET AL. D. C. M. D. Ala. Order entered October 14, 1968 [*ante,* p. 815], restoring temporary relief is continued pending action upon the jurisdictional statement which has been filed. Motion to advance and expedite denied. MR. JUSTICE STEWART and MR. JUSTICE WHITE dissent from continuance of the order restoring temporary relief. MR. JUSTICE BLACK took no part in the consideration or decision of this matter. *Charles Morgan, Jr., Orzell Billingsley, Robert P. Schwenn,* and *Melvin L. Wulf* on the motion.

MR. JUSTICE HARLAN, concurring in part and dissenting in part.

The State of Alabama has excluded from its ballot in the forthcoming general election all but two of the candidates for local, state, and national office nominated

by the National Democratic Party of Alabama, a newly organized political group. Members of the Party, together with the Party itself, contend before us that the state statutes invoked in justification of Alabama's action violate rights guaranteed both by the Voting Rights Act of 1965, 79 Stat. 437, 42 U. S. C. § 1973 (1964 ed., Supp. III), and the Constitution of the United States.[1] It is clear to me that both the statutory and constitutional issues appellants have raised require plenary consideration of difficult and important questions that cannot be properly resolved in the time remaining before the ballots are cast, no matter how expeditiously the appeal is heard. Consequently, I concur in the Court's denial of the motion to advance plenary hearing on the merits of the case.

Such study as I have been able to make of the papers, in the short time since they were submitted to the Court, nevertheless convinces me that the chances of the Party's ultimate success on the merits are sufficiently substantial so that we may appropriately take steps to prevent the risk of an irretrievable loss of important federal rights in the approaching election. Unfortunately, while the Court properly seeks to protect appellants from irreparable injury, it has done so in a manner that is almost

---

[1] The three-judge District Court which initially heard this case issued a temporary injunction requiring Alabama to include on the ballot the names of all candidates of the National Democratic Party, and Alabama proceeded to comply. Upon consideration of the case on the merits, the District Court, with Chief Judge Frank M. Johnson dissenting, held against the plaintiffs and dissolved its temporary injunction. This occurred on October 11, 1968. A motion to reinstate the lower court's temporary relief was made to us on the following day and an appeal was filed on Monday, October 14, along with a motion to accelerate our consideration of the cause. On the same day, we set the two motions before us for argument on Friday, October 18, reinstating the District Court's injunction for the interim period.

bound to create substantial confusion in the minds of Alabama's voters when they cast their ballots for the Presidency of the United States. By ordering appellants' slate of Presidential Electors on the ballot, the Court has created a situation in which two different slates, both pledged to support Hubert H. Humphrey and Edmund S. Muskie, will be presented to the electorate in November. In addition to the National Democratic Party, the Alabama Independent Democratic Party—whose right to ballot position is uncontested—has advanced a list of Electors who are pledged to this same national ticket. Since many voters do not realize that they do not have a direct voice in the selection of the President, it will not be clear to them that the votes cast for the Humphrey-Muskie ticket on the National Democratic line of the ballot will not be cumulated in the final tabulation with the votes cast for these same national candidates on the Independent Democratic line. But that, of course, is precisely the legal result—for votes cast for two different Electoral slates are not properly counted together under state law. A split in the Humphrey-Muskie vote, which in large part may simply be the product of ignorance, will be the almost certain result.

In our recent decision in *Williams* v. *Rhodes, ante,* at 33 (opinion of the Court), and at 46–47 (MR. JUSTICE HARLAN, concurring in the result), we recognized that the State may properly take steps to prevent a clear risk of voter confusion. This interest should inform our decision here. Alabama's Presidential election will be much fairer, under all the circumstances, without the presence of the National Democratic Party. Moreover, it seems quite evident that it would be possible for the State's election officials to comply with a decision of this Court ordering that all National Democratic candidates, other than those running for the office of Presidential Elector,

be placed before the voters in November. My inspection of the sample ballots submitted to us leads me to believe that such an order would present no insuperable administrative obstacles,[2] and I do not understand counsel for the State to contend otherwise.[3]

---

[2] The names of each Party's 10 candidates for the office of Elector are not interspersed with the names of the candidates for other offices, but appear one after another in a bloc on the sample ballot that has been submitted to us.

[3] At the argument, Alabama's counsel made the following statements as to the State's ability to comply with an order of this Court:

"Mr. Justice Brennan: What is the situation about the preparation and distribution of ballots?

"Mr. Redden (for Alabama): The probate judges in the various counties are charged with the preparation of the ballots in their particular county. I think the Court will readily understand as has been pointed out that this is not a complete ballot [pointing to a sample ballot], as the ballot will vary from county to county because of the fact that there are local and county offices up for election during 1968. So that on the ballot in each county you would have your statewide offices, you would have only one of these candidacies for Congress. We have eight congressional districts so that in the appropriate district you have a different ballot in each county.

"Mr. Justice Stewart: Is there only one ballot in each county, however?

"Mr. Redden: Sir?

"Mr. Justice Stewart: In other words, is there only one ballot . . . ?

"Mr. Redden: As I understand the question, there is only one ballot in each county.

"Mr. Justice Stewart: Yes—but each one is different . . . .

"Mr. Redden: To answer your question I would have to say that you would not have a uniform situation with reference to the degree of preparation of the ballot from county to county.

"Mr. Justice Brennan: Do we have any information as to what each probate court judge did when the interim order came down?

"Mr. Redden: I have some hearsay information solely. Remember that in the portions of the state voting on voting machines, those have been prepared in a great many cases following the District Court's order. In some other instances the ballots are being printed

Equity does not require the broad injunction the Court has issued, but rather an act of discretion that is fully cognizant of all the consequences of our actions.

by printers at the order of the probate judges. There is no uniformity right now. They are in various states of preparation.

"Mr. Justice Brennan: Well, is that to say then that to the extent that ballots are being prepared whether they are printed ballots or on voting machines, that they comply with the interim order and include the Column 7 [National Democratic Party] list?

"Mr. Redden: I would have to say that a good many do not, that probably more do not than do. We have made contact since the Court rendered the order here with as many [probate judges] as we have been able to contact to advise them of the issuance of this order and to have them to undertake to do whatever they can do with regard to trying to wait and trying to find a printer who can put them in a position of compliance. But really we are getting very close to the election and I am sorry that I am unable to tell the Court precisely what the situation is in each county . . . .

"Mr. Justice Fortas: Now you did not—the Attorney General did not—in the telegram sent to this Court assert that it would be impossible to comply with an order, if there were any, granting the relief requested.

"Mr. Redden: That's my understanding.

"Mr. Justice Fortas: Are you now saying that compliance would be impossible or are you not?

"Mr. Redden:. I would not represent that to the Court. I would say that the officials will make every effort to comply with any order this Court makes. I'm not sure that it will be [possible] in every case, but I make no assertion of impossibility. I am not prepared to.

. . . . .

"Mr. Justice Harlan: As I understand it, the restraining order in its present posture states that you would have on your ballot two sets of Presidential Electors, each of them pledged to Humphrey and Muskie, and then you have a third set pledged to Wallace, and a set pledged to Nixon and Agnew. Assuming for the moment that the restraining order were modified so as to eliminate the Electors of the appellant here but to leave their candidates on the ballot for other offices, what effect would that have on the Election? Could that be done? Could you eliminate from the ballot the Presidential Electors of these appellants and leave the other candidates on?

"Mr. Redden: 1 can't say that it cannot be done. I would only have to represent to you that if it can be done it would be an

I would therefore modify the temporary relief this Court granted on October 14, 1968, to permit the State's election officials to remove from the ballot the Party's candidates for the office of Presidential Elector.

OCTOBER 21, 1968.

---

extremely difficult thing to accomplish. I don't want to represent further than that because I don't have the knowledge adequate to do it.

"Mr. Justice Harlan: Would it be more difficult than taking all the names off?

"Mr. Redden: Yes, sir, for this reason, as I may point this out. The uniform removal may be accomplished in other ways that are very simple, whether to use a machine or a ballot because the intersplicing would be difficult. The District Court ruled in favor of the defendants on the constitutional issues and said that we exercised our discretion to refrain from deciding individual factual disputes. Those have not been ruled on.

"Mr. Justice Brennan: If, as you suggested, it might be difficult to delete the Electors now under the interim order to be on the ballot for this Party. Of course it would be much more difficult to substitute other names . . . ."