The **UNITED CITIZENS PARTY OF SOUTH CAROLINA** and **John Roy Harper, II**, Individually and as President of the United Citizens Party of South Carolina, Plaintiffs,

v.

The **SOUTH CAROLINA STATE ELECTION COMMISSION**, a public body corporate, and **James B. Ellisor**, Executive Director of the South Carolina Election Commission, Defendants.

**Civ. A. No. 70–924.**

United States District Court,
D. South Carolina,
Columbia Division.

Argued Oct. 26, 1970.

Decided Oct. 28, 1970.

Matthew J. Perry, Columbia, S. C., James Finney and Hemphill Pride, II, Columbia, S. C., for plaintiffs.

Daniel R. McLeod, Atty. Gen., Michael W. Tighe, and Robert W. Brown, Asst. Attys. Gen., for defendants.

Before CRAVEN, Circuit Judge, and HEMPHILL and RUSSELL, District Judges.

CRAVEN, Circuit Judge:

This action was brought by plaintiffs, United Citizens Party of South Carolina and John Roy Harper, II, president of the United Citizens Party of South Carolina, for a declaratory judgment that Section 23–264 of the Code of Laws of South Carolina is unconstitutional on its face and as applied to the plaintiffs and for injunctive relief requiring the defendants to place the names of the United Citizens Party's candidates for governor and lieutenant governor on the ballot for the general election on November 3.

According to the testimony of plaintiff John Roy Harper, II, the United Citizens Party was begun in the latter part of 1968 as the result of the feeling of a number of citizens of South Carolina that neither of the major political parties truly represented the interests of the black citizens of South Carolina. Determining to create an independent political party, Mr. Harper and others undertook a petition campaign to obtain the signatures of 10,000 registered voters required for certification of a political party by Section 23–251 of the Code of Laws of South Carolina. On May 22, 1970, 11,048 signatures on petitions requesting the certification of the United Citizens Party of South Carolina were submitted to the South Carolina Secretary of State.

A month to six weeks later, the Secretary of State's office notified the United Citizens Party that a random comparison of the names on the petitions with the rolls of registered voters indicated that 13 percent of the signatures were not those of registered voters. After negotiations with the United Citizens Party and another two weeks of checking the rolls, the Secretary of State's office reduced their determination of the number of unqualified signatures to 11 percent, which meant that the United Citizens Party was a few hundred signatures short of the required 10,000. On August 24, 1970, petitions containing an additional 700 signatures were submitted to the Secretary of State. The party was finally certified by the South Carolina Secretary of State on September 1, 1970.

The United Citizens Party convened in state convention on the evening of September 1, 1970. The state convention decided to nominate candidates for only two of the state's constitutional offices. Tom Broadwater was chosen as the party's nominee for governor and J. C. McTeer was chosen as the nominee for lieutenant governor. In a letter to the South Carolina Secretary of State, the president of the party, John Roy Harper, II, requested that the names of the party's nominees be placed on the ballot for the November 3, 1970, general election.

The response to the letter addressed to the South Carolina Secretary of State came from the State Election Commis-

sion, which commission was substituted in authority for the Secretary of State by an act of the legislature in 1968. The letter from the Election Commission, dated September 4, 1970, advised the United Citizens Party as follows:

Section 23–264 of the 1962 South Carolina Code of Laws provides in part as follows:

" * * * Provided, that any political party nominating candidates by party convention shall nominate the party candidates and make the nominations public not later than the date and time fixed for the closing of primary entries * * *. "

The only political party in South Carolina to hold a primary election to nominate candidates for statewide offices to be voted on in the November 3, 1970, General Election was the Democratic Party of South Carolina. Section 23–396 of the 1962 South Carolina Code of Laws requires that political parties nominating candidates for statewide offices in a primary election must close the filing time for candidates at two weeks after the day after the State convention convenes. The Democratic State Convention convened on March 25, 1970 and the filing deadline for candidates for statewide offices to be nominated in the primary closed on noon April 9, 1970.

Therefore, in view of the requirements of Section 23–264 set out above, any candidate nominated by way of convention must have been nominated and his name made public not later than noon April 9, 1970.

Plaintiffs filed the complaint in this action on October 20, 1970, requesting a declaratory judgment that Section 23–264 is in violation of the Constitution of the United States and an injunction requiring the defendants to place the names of the United Citizens Party's candidates on the ballot for the November 3, 1970, general election. Plaintiffs contend that Section 23–264 is unconstitutional in two aspects. First, it is urged that it is an unconstitutional dele-

gation of power by the South Carolina Legislature to the established private political parties of South Carolina to fix the specific deadline by which the candidates must be nominated and announced. Secondly, it is urged that the requirement that the candidates entitled to a position on the ballot be nominated and announced some seven months prior to the general election discriminates against the plaintiffs in violation of rights guaranteed by the First and Fourteenth Amendments and is not justified by a compelling state interest.

Before dealing with the constitutional arguments raised by the plaintiffs, we are compelled to deal with questions of interpretation of the statutory election laws of South Carolina. While we cannot interpret questions of South Carolina law with finality, it is our duty to make the attempt when there is no interpretation by the highest state court. Roginsky v. Richardson-Merrell, Inc., 2 Cir., 378 F.2d 832, 851 (1967). If there were time, we might well abstain pending a determination of the state law questions by the state courts. Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). But the election is only a few days off. Any delay would render moot whatever limited relief remains possible.

I.

IS THE UNITED CITIZENS PARTY OF SOUTH CAROLINA A PROPERLY CERTIFIED PARTY?

In their answer, defendants urge as a defense that the United Citizens Party of South Carolina has not been duly certified as a political party under the requirements of the election laws of South Carolina and that, accordingly, the party is not entitled to have the names of its candidates placed on the ballot.

Prior to a 1968 revision of the South Carolina election laws, the responsibility for conduct of elections in South Carolina was placed in the office of the South Carolina Secretary of State. Section

23–251 of the South Carolina election laws provided for certification of new political parties by the Secretary of State upon the filing of petitions requesting certification containing the signatures of 10,000 registered voters. The election laws of South Carolina were revised during the 1968 session of the legislature to become effective January 1, 1969. This revision created a new agency, the State Election Commission, and transferred to it most of the duties formerly imposed on the Secretary of State with regard to elections. The revision did not specifically amend Section 23–251 which provided for certification of political parties by the Secretary of State, however.

Defendants suggest that the 1968 revision must be interpreted to have amended Section 23–251 by implication. They refer our attention to a revision of another section of the election laws in which the State Election Commission was substituted for the Secretary of State, codified as Section 23–400.15 after the 1968 revision, which now refers to "political party, certified as such by the State Election Commission." The defendants argue from this that since the United Citizens Party received their certification from the Secretary of State and not the State Election Commission, that certification is void.

■ We reject the argument. When the United Citizens Party submitted its first set of petitions in May to the Secretary of State, no suggestion was made by either the Secretary of State or the State Election Commission that the petitions must go to the State Election Commission. A random comparison of the names on the petitions with the county voter lists was conducted by the Secretary of State's office over a period of approximately two months. When the Secretary of State's office finally notified the plaintiffs that 11 percent of the signatures would not be accepted there was apparently no suggestion that the petitions should be submitted to the State Election Commission. When the Secretary of State sent the official certi-

fication to the United Citizens Party on September 1, 1970, there was no suggestion that the Secretary of State was no longer entitled to certify parties. Moreover, when the plaintiffs two days later mailed a letter to the Secretary of State requesting that the names of its candidates be put on the ballot, the reply came from the State Election Commission and not the Secretary of State. There was no suggestion in this letter that the United Citizens Party was not duly certified.

We conclude that the lengthy certification process conducted by the Secretary of State was likely done with the knowledge and consent of the State Election Commission and that neither agency then interpreted the 1968 revision to transfer the certification responsibilities to the State Election Commission. During this interim period after the statutory change the activity and responsibility of the two agencies apparently coalesced. Moreover, we think reliance of the United Citizens Party on official state action estops the state to now belatedly urge what is at most a highly debatable interpretation of the statutes not at all compelled by the language.

## II.

### IS SECTION 23–264 OF THE ELECTION LAWS OF SOUTH CAROLINA UNCONSTITUTIONAL AS AN INVALID DELEGATION OF LEGISLATIVE AUTHORITY TO POLITICAL PARTIES?

■ It is a black letter rule now so firmly fixed that it is found in legal encyclopedias that a legislature may not delegate legislative functions to private persons or associations. 16 Am.Jur.2d "Constitutional Law" § 249. The Supreme Court of South Carolina has recognized this principle and adopted it as the law of South Carolina in Ashmore v. Greater Greenville Sewer District, 211 S.C. 77, 44 S.E.2d 88 (1947). It was there held that legislative delegation to persons, groups or organizations unrelated to official government of power to

nominate, appoint, or elect public officers is unconstitutional as an invalid delegation of legislative power and as a violation of equal protection of the laws and due process of law clauses of the state Constitution of South Carolina. The South Carolina Supreme Court qualified its decision to make a possible exception of a situation where the unofficial persons or bodies may be said to have a rational and substantial relation to the law to be administered. Although not deciding the question, the South Carolina Supreme Court suggested, by way of illustration, that delegation of legislative power to appoint the Board of Visitors of the Citadel to the extent of permitting two members to be elected by alumni might be constitutional because of the interest and knowledge of alumni in the affairs of the institution.

We think from the statement of the rule and the choice of illustration of a close case it is clear that the South Carolina Supreme Court, if faced with the problem, would adhere to the black letter rule rather than the exception in the context of this case. It is one thing to permit participation by alumni in the affairs of a state institution and quite another, we think, to permit one political party to dominate and control and wholly determine when other political parties must offer their candidates for office. It is our duty to apply the federal Constitution, and in so doing we are not bound by decisions of state courts, but we are strengthened in our belief that Section 23–264 is an unconstitutional delegation of power by the parallel opinion of the South Carolina Supreme Court in the interpretation of its own similar state constitution.

In Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1935), the United States Supreme Court invalidated the Bituminous Coal Act on the ground of an unconstitutional delegation of congressional power to private interests. The statute under consideration purported to delegate the power to fix maximum hours of labor to a part of the producers of coal and to the miners.

The Court said that this is legislative delegation in its most obnoxious form, noting that private interests may be and often are adverse to the interests of others in the same business. The same is true, we think, with respect to different political parties. The Court said:

> [I]n the very nature of things, one person may not be entrusted with the power to regulate the business of another, and especially of a competitor. And a statute which attempts to confer such power undertakes an intolerable and unconstitutional interference with personal liberty and private property. The delegation is so clearly arbitrary, and so clearly a denial of rights safeguarded by the due process clause of the Fifth Amendment, that it is unnecessary to do more than refer to decisions of this court which foreclose the question.

South Carolina laws Section 23–262 provides that a political party's state convention must take place in March after ten days' notice. There is no requirement that the notice be given in March, so the convention may be held any time between March 1 and March 31. Section 23–396 provides that if a party decides to choose its candidates for office by primary, the time for submitting names for the primary begins at noon the day following the convention and continues for the next two weeks. Section 23–264 sets the date for submitting names for the ballot by parties choosing their candidates at the state convention at 60 days prior to the election except that the names must be submitted no later than the date for the closing of primary entries. Therefore, a political party having a primary can control the date of submission of candidates by parties having no primary by their control over the date of their state convention. If the Democratic Party decides to have a primary and holds their state convention on March 31, the closing date for submission of names is April 14. If the Democratic Party holds its convention on March 1, the closing

date for submission of names is March 15. If, however, the Republican Party subsequently broke with tradition and decided to have a primary at a state convention held on March 31, the date for filing names for a third party would be moved back to April 14.

But the potential delegation problem is much greater. Consider what would happen if the Democratic Party broke with tradition and decided not to have a primary. The proviso is based on the closing date for filing of primary entries and if no party is having a primary, the provison is inoperative. Removing the proviso leaves the 60-day-prior-to-election closing date in Section 23–264 (which apparently has been reduced to 35 days by Section 23–400.15). Section 23–264 also provides that the requirement that a party hold its convention in March applies only to parties deciding to have a primary. A party not having a primary can hold its state convention at any time after three weeks' notice. The only practical time limit on the date of holding a convention is the need to hold the convention early enough to select and then submit the names of the party's candidate within the 60-day time limit in Section 23–264 (or 35 days if that is the effect of Section 23–400.15).

Thus it is clear that the *sine qua non* of the plaintiffs' failure to meet the statutory time limit for submitting the names of its candidates was the Democratic Party's decision not to break with tradition and to hold a primary in 1970. The plaintiffs filed the names of its nominees 61 days prior to the election. The Democratic Party's decision to hold a primary changed the cut-off date from a potential of 60 days (or 35 days) to seven months prior to the election. The full effect of the delegation problem is exposed by the facts of this case.

We hold that Section 23–264 is unconstitutional as in violation of the due process clause of the Fourteenth Amendment and as in violation of the right of the people peaceably to assemble and petition the government for redress of grievances, guaranteed by the First Amendment and applied to the states by the Fourteenth Amendment.

Because of our belief that we should file this opinion prior to the general election, we are unable to reach and determine another substantial question that arises on the record. It is suggested that any statutory regulation of elections, without regard to unlawful delegation, that may result in the exclusion of candidates unless they announce for public office as long as seven months before the election is to be held effectively violates the First Amendment and the equal protection clause of the Fourteenth Amendment because it is arbitrary and capricious and calculated to hinder persons from offering for public office, and that there is obviously no compelling state interest to support such a requirement. Despite whatever merit there may be in such a contention, we feel foreclosed by time limitation to give the question the careful consideration it deserves, and express no opinion upon it.

III.

AVAILABILITY OF REMEDY

The defendants urge that due to the laches of the plaintiffs in waiting until October 20, 1970, to file this lawsuit, they are entitled to no relief, and argue that Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), compels this result. We disagree.

In Williams v. Rhodes, Mr. Justice Stewart granted relief to the American Independent Party, but a few days later denied relief to the Socialist Labor Party. The *Williams* majority opinion states that the reason relief was denied to the Socialist Labor Party was that at the hearing on the party's motion before Mr. Justice Stewart the State of Ohio objected on the ground that it would be impossible to place the party on the ballot without disrupting the process of the election. Ohio did not make this objection at the earlier hearing on the American Independent Party's motion for relief.

At the hearing in this case on October 26, 1970, the uncontradicted evidence showed that it was too late to reprint the 800,000 paper ballots to be used in the election of state-wide candidates at the November 3, 1970, general election. We agree with the defendants' interpretation of Williams v. Rhodes to the extent that the lateness of bringing this action deprives the plaintiffs of the total relief to which they would otherwise be entitled, i. e., to have the state reprint the ballots with the names of the United Citizens Party candidates.

But we do not agree that Williams v. Rhodes requires the denial of all relief. In Hadnott v. Amos, 394 U.S. 358, 89 S. Ct. 1101, 22 L.Ed.2d 336 (1969), the Supreme Court was again faced with the question of granting relief shortly before a statewide election to a party which was held to be entitled to a position on the ballot. The suit was brought by the National Democratic Party of Alabama. A three-judge district court initially granted a temporary restraining order requiring the party's candidates be put on the ballot. After a hearing on the merits, the district court dissolved the temporary injunction and upheld the state statutes in question. The party sought immediate relief in the Supreme Court and on October 14, 1968, the Court reinstated the temporary restraining order (a full month after Mr. Justice Stewart denied relief to the Socialist Labor Party in Williams v. Rhodes). Hadnott v. Amos, 393 U.S. 815, 89 S.Ct. 138, 21 L.Ed.2d 90 (1968). At the hearing on the motion, the Court inquired of counsel for Alabama of the feasibility of preparing new ballots. Counsel replied that the ballots were different for each county, that they were prepared by the probate judges of the various counties, and that he didn't know whether new ballots could be prepared in the remaining time, but that they would try. See Hadnott v. Amos, 393 U.S. 904, 89 S.Ct. 227, 21 L.Ed.2d 208 (1968). On the basis of this representation, the Court reinstated the temporary injunction. Reading Williams v. Rhodes together with Hadnott v. Amos, we conclude that it is appropriate for us to order whatever limited relief remains practicably possible within the short time remaining before the general election.

■ At the hearing held on October 26, 1970, this court inquired of the defendants what limited relief might remain possible. When asked if the voting machines used in a few South Carolina cities could be changed to contain the names of the United Citizens Party's candidates, counsel for the defendants replied that they did not know if it was mechanically possible in the remaining time. We feel it appropriate to compel the defendants to try and, if it does prove mechanically impracticable, to compel them to facilitate the write-in vote privilege on the voting machines in any manner that proves feasible. When asked if gummed labels preprinted with the names of the candidates of the United Citizens Party could be used to facilitate write-in votes, counsel for the defendants urged upon us that South Carolina law requires that voters who wish to cast their vote for a "write-in" candidate must write his name on the ballot in the voter's own handwriting, or in the handwriting of someone assisting him if he should be illiterate or partly so. Yet the official ballot itself contains these words, the significant part of which is italicized: "If you wish to vote for a candidate not on any ticket, write *or place* the name of such candidate. * * *" See Section 23–400.13 of the South Carolina election laws. Assuming without deciding that the state is correct in its interpretation of this South Carolina law, we think it must temporarily yield to the constitutional right of plaintiffs, to the extent that those rights can be implemented. Accordingly, we hold that the state must permit the placing of gummed labels containing the names of the United Citizens Party's candidates in the write-in column of the official ballot if the plaintiffs print and distribute such labels at their own expense and that these votes must be counted.

Since the time required to prepare this opinion would have made impossible the very limited relief to which we feel plaintiffs remain entitled, we have previously prepared and issued on October 28, 1970, an injunction compelling the state to grant the relief outlined above. A copy of that injunction is attached to this opinion as an appendix and made a part hereof.

To avoid any misunderstanding, we anticipate a contention that may subsequently arise. In view of the laches of plaintiffs, and since we have been able to grant partial relief, we conclude that the decision herein will not leave open to question the validity of the November 3, 1970, general election. See Maryland Citizens for a Representative General Assembly v. Governor of Maryland, 429 F.2d 606 (4th Cir. 1970).

DONALD RUSSELL, District Judge, concurs.

## INJUNCTION

This is a suit brought before a United States Court composed of three Judges for the purpose of declaring invalid and unconstitutional certain portions of the election laws of South Carolina and to secure an injunction to require the election officials of South Carolina to put on the ballot for the General Election November 3, 1970, the names of candidates of the United Citizens Party.

The Complaint was filed October 20, 1970. The Answer was filed on October 23, and this Court was convened by order of the acting Chief Judge of the Circuit on October 23, 1970. Because of the imminence of the General Election, the case was accelerated on the calendar and heard on October 26, 1970.

Because it is now just six days until the General Election, there can be no further delay in our decision, for to delay it might well prevent the extremely limited relief that remains possible of accomplishment. We are, therefore, compelled to announce our decision and to subsequently explain it in an opinion that will be filed in a few days. For reasons to be subsequently stated, a majority of the Court is convinced that these Plaintiffs are entitled to a decision in their favor and whatever relief remains possible within the time limitation.

It is, therefore, ordered, adjudged and decreed that the Defendants be and they hereby are, enjoined as follows:

(1) Unless found by the State to be mechanically impracticable to accomplish, the names of the United Citizens Party candidates shall be placed on all voting machines used in South Carolina at the General Election November 3, 1970.

(2) If the State should conclude that putting the names in the machines is impracticable to accomplish, then the State shall facilitate to the maximum extent possible the exercise of the write-in vote privilege on such voting machines in any manner that may prove feasible.

(3) If the Plaintiffs elect to print and distribute at their own expense gummed labels displaying the names of their candidates, the State will allow and permit the placing of such labels in the write-in column of the official ballots in said General Election and will count the same whether or not written over in handwriting.

The members of the Court reserve the right to file concurring or dissenting opinions. Judge RUSSELL joins in the issuance of this Injunction and authorizes the undersigned United States Circuit Judge to sign it for the Court. Judge HEMPHILL dissents.

HEMPHILL, District Judge (dissenting).

I respectfully dissent.

The order of the majority of the court in this matter is of grave concern to this member. Therefore, I find it necessary to state the areas of my dissatisfaction with the prevailing opinion.

## I

There is no delegation of legislative power by Section 23–264 (S.C.Code 1962 Anno.) impermissible or otherwise. As this court understands the election laws of the State of South Carolina the nomination of candidates and subsequent placing of their names on the ballot as pertinent to these facts is required by statute to proceed as follows:

(a) The party county committee calls a county convention for the selection of state delegates, which convention meets on the 1st Monday of March of general election years. (Section 23–259) Members of the parties state committee are also chosen at county conventions. (Section 23–259)

(b) The state committee sets the date for the state convention. Ten days notice of the convention must be given and the convention must be held in March. (Section 23–261) Thus the earliest the convention can be held is March 11 and the latest is March 31.

(c) If the party in convention chooses to nominate by primary the time for filing commences the day after the convention and closes two weeks later. The challenged statute Section 23–264 provides that nominations made at convention shall be made not later than the closing of primary entries.

(d) If no party chooses to select its candidates by primary then presumably the nominations need not be made until 35 days before the election (Section 23–400.15).

The opinion of this member of the court is that the above constitutes no delegation of legislative power. Any party may choose to nominate by primary or nominate by convention. By holding its convention at the latest possible date and choosing to nominate by primary, any party can by itself extend the time for nominations for a very limited time. Only by acting in concert and all parties nominating by convention could the time be extended to that specified in Section 23–400.15. However, the parties cannot simply fix the date affecting the plaintiff herein as indicated by the majority. Their power, as granted by the statute, is to make a significant choice with reference to their own conduct. (To nominate by primary or convention). The result complained of by the plaintiff and the court comes from the operation of the statute as a consequence of the separate determinations of the parties concerning their nomination of candidates, not from the choice of the parties collectively or any one of them as to what the date for nomination shall be. It has never been the law nor could it be that statutory requirements effected by or activated upon an act of a private party, even if such act may be volitional on the part of the private party, would constitute a delegation of power to that private party. For example, the law may require that a motorist report any automobile collision to the proper authorities. A private party may commit an assault with his automobile upon a second motorist in his automobile. *Both motorists must comply* with the statute. The majority opinion would say that requiring the victim to report constitutes an unauthorized delegation of power to the assaulting motorist. In State ex rel. Richards v. Moorer, 152 S. C. 455, 150 S.E. 269 (1929) the South Carolina court reasoned (in dismissing an attack on a Legislative Act providing (among other things) for financing highway construction by the South Carolina State Highway Commission) as to the "delegation doctrine":

There is no question here of alternative laws. There is but one law, with alternative plans of financing provided for the purpose of carrying out the law. The act, as it came from the hands of the Legislature, is complete in itself in form and substance; * * * The highway commission is given no power to add to, or to take away from, the law as enacted, * * * The authority conferred upon the commission * * * is an authority or discretion as to the execution of the law, being merely a

choice of method of procedure for carrying out the purpose of the act, and is nothing more than provision for efficient execution and administration of a finished statute.

Here the determination to be made by political parties is of very substantial importance to those parties. The consequence complained of as a delegation of legislative power is the direct result of the operation of the statute. The political parties have no choice with respect to the deadline for filing. Therefore no power has been delegated to them in that regard.

## II

Having found in Code Section 23–264 a delegation of legislative power to a private party the majority declares it unconstitutional and issued its injunction. Article I, Section 1 of the United States Constitution vests in the Congress all the legislative powers of the federal government. Article III Section 1 of the Constitution of South Carolina accomplishes, on the state level, an analogous delegation of state powers to the state legislature. Three-judge courts have power to declare state statutes unconstitutional only if they violate the United States Constitution.[1] While a delegation might be impermissible under the Constitution of the State, it by no means follows that it is also impermissible under the Fourteenth Amendment. The Fourteenth Amendment has never been interpreted, nor was it designed to make Article I, Section 2 of the United States Constitution applicable to the states.

This member simply cannot understand how it follows from the finding of a delegation of legislative power that there is a violation of the due process clause of the Fourteenth Amendment.

## III

Aside from his disagreement with the court as to the constitutionality of the statute in question, this member does not consider appropriate the relief granted.

By letter of September 3, 1970, the plaintiff political party informed the Secretary of State of the names of the plaintiff's candidates and requested that they be placed on the ballot. By letter of September 4, 1970, the plaintiff was informed by the Director of the State Election Commission that the challenged statute (Section 23–264) prohibited the placing of the names on the ballot. That letter was concluded as follows:

> Therefore, on behalf of the State Election Commission I hereby advise that I am without authority to place the names of your nominees for Governor and Lieutenant Governor on the ballot for the November 3, 1970 General Election unless notified to the contrary by the Attorney General of the State of South Carolina or an appropriate court order.

This action was filed on October 20, 14 days before the election was to be held. The matter came to be heard by the court on October 26. At the time the uncontroverted evidence indicated:

(1) The ballots had been printed commencing September 24 at a cost of $8,000.00 and distributed October 16, 1970.

(2) The absentee ballots had been distributed October 7 and an undetermined number of them had been marked and returned.

(3) New ballots could not be printed and distributed prior to the election.

Thus the complaint of the plaintiff came too late to allow relief to be given without creating confusion (Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L. Ed.2d 24 (1968)) and the plaintiff was

---

1. See Swift and Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965), interpreting 28 U.S.C. 2281:

   The "unconstitutionality" clause of § 2281 can hardly be thought to encompass the voiding of a state statute for inconsistency with the state constitution. (p. 126, n. 25, 86 S.Ct. p. 267)

guilty of delay giving rise to the equitable doctrine of Laches. Either of which considerations requires that the injunction not issue.

The *Williams* case states that an injunction should not be issued if because of the nearness of the impending election confusion will result. The most certain indication that this counselling of the Supreme Court has been violated by this court is found in the body of the injunction. The defendant is required:

1) Unless found by the State to be mechanically impracticable to accomplish, the names of the United Citizens Party candidates shall be placed on all voting machines used in South Carolina at the General Election November 3, 1970.

2) If the State should conclude that putting the names in the machines is impracticable to accomplish, then the State shall facilitate to the maximum extent possible the exercise of the write-in vote privilege on such voting machines in any manner that may prove feasible.

This member knows of no injunction issued by any court to requiring an act if not "mechanically impracticable to accomplish" or to "facilitate to the maximum extent possible." Those terms are difficult to define making enforcement by the court impossible. The defendant cannot know whether, under the conditions existing, specific acts are necessary and it is subject to the contempt power of this court should it err in its determination of what is "mechanically practicable" in the time remaining or what is "maximum facilitation possible."

The injunction, because the court did not know, indeed it appeared that no one knew, what could be done along the lines indicated, left determination to the defendant. The defendant must make that determination, as this member must write this dissent, without proper deliberation and information because of the nearness of the impending election. The defendant must make its determination at its own peril. The lateness of the

hour required the vagueness of the order. The vagueness of the order necessarily infuses confusion and speculation into the elective process and opens the door for politically motivated charges and countercharges extraneous to the legitimate concern of the electorate.

The fact that the *Williams* case based its decision on the avoidance of confusion in the election, does not indicate that the defense of Laches may not prevail where such defense is clearly made out by the facts. The plaintiffs herein were informed of the position of the defendant with regard to placing the names on the ballot by the 5th or 6th of September. They remained silent while the ballots were printed and distributed and the voting machines set, all at substantial expense. Quite apart from the lateness of the complaint with regard to the approaching election, the intervening actions of the defendants, after promptly and unequivocally advising the plaintiffs of the state's position, should bar further relief. No substantial explanation for the delay was offered by the plaintiff.

### IV

The majority substitutes its judgment of the proper timing of pre-election procedures for the judgment of the South Carolina State Legislature. It does so absent any showing that such timing, in practice, causes any hardship or effects any discrimination. The majority ignores the fact that Democrats, Republicans, and Independents have followed the law. To declare the statute (Section 23–264, South Carolina Code, 1962, Annotated) unconstitutional on the basis of the majority's judgment as to timing is to deprive the people of South Carolina of the right to prescribe orderly processes for all political parties. The statute(s) make no distinction.

At no place in the statute is the Democratic Party named. At no place in the statute are other parties excluded. The majority, for the purpose of supporting its ultimate findings, reads into the

statute what it chooses, then decides the statute unconstitutional as re-written by judicial fiat.

What timing would the majority prescribe? Would it dictate the election laws the legislature must now re-enact, (assuming arguendo that the majority is correct) or shall we assume the majority has found the state has no "compelling state interest" to protect, and elections shall be guided by court direction?

The statute imposes no heavy burden. Even cursory examination of Section 23–264 reveals that this has been the law since 1950. Elections "have come and gone", and apparently a people have been satisfied. A two-party system (now there are three, and possibly more parties) has been born, nurtured and grown to maturity in the passing years. Suddenly, for the expediency of the majority opinion, the guidelines have been crushed. Such expediency has no place in judicial decisions. The majority says the statutes favor one party despite the fact three parties are already on the printed ballot which will be used in the election of November 3. Those three parties have abided by the statutes; they do not complain. Perhaps this fact has no place in judicial reasoning as to the reasonableness or fairness of the state election laws. But to allow one party to ignore the law until the eleventh hour and hope the courts will forgive the party its mistakes of omission, and at the same time provide a sounding board for publicity purposes, defeats the integrity with which we would cloak our elections.

In Williams v. Rhodes (1968), supra, the Supreme Court of the United States recognized the judicial impropriety of eleventh hour presentations:

> Certainly at this late date it would be extremely difficult, if not impossible, for Ohio to provide still another set of ballots. Moreover, the confusion that would attend such a last-minute change poses a risk of interference with the rights of Ohio citizens, for example, absentee voters.

The corollary is obvious.

It was for these reasons the injunction was first refused by this member on October 23. It is for these reasons the action should be dismissed at this publication.