**Robert TOPOREK, Plaintiff,**

v.

**SOUTH CAROLINA STATE ELECTION COMMISSION, et al., Defendants,**

**O. T. Wallace, Chairman, Executive Committee, Charleston County Democratic Party, and Donald Fowler, Chairman, Executive Committee, South Carolina Democratic Party, Intervenors.**

**John Roy HARPER, II, Individually and as Chairman of the United Citizens Party of South Carolina, et al., Plaintiffs,**

v.

**John C. WEST, Governor of the State of South Carolina, et al., Defendants.**

**Civ. A. Nos. 72–1225, 72–1256.**

United States District Court,
D. South Carolina,
Columbia Division.

Heard Oct. 12, 1972.

Decided Jan. 26, 1973.

Frank Epstein, Charleston, S. C., for plaintiff.

Daniel McLeod and Hardwick Stuart, Jr., Columbia, S. C., for defendants.

Coming Ball Gibbs, Jr., and John Graham Altman, III, Charleston, S. C., for intervenors.

John Roy Harper, II, Columbia, S. C., Mordecai Johnson, Florence, S. C., Jack Greenberg, New York City, for plaintiffs.

Hardwick Stuart, Randall T. Bell, Columbia, S. C., for defendants.

Before HAYNSWORTH, Chief Judge, RUSSELL, Circuit Judge, and BLATT, District Judge.

## OPINION AND ORDER

BLATT, District Judge:

In the above entitled actions, which were consolidated by this court, and which are generally cognizable under 42 U.S.C. § 1983, the plaintiffs each sought an Order of this court directing the South Carolina Election Commission and/or several county election commissions to place the names of various aspirants for public office on the ballot for the November 7, 1972, general election.

In Civil Action No. 72–1225, the plaintiff Toporek presented himself as a petition candidate for Senate Seat No. 1, in Senate District No. 16, by submitting his petition on September 25, 1972, allegedly containing the statutory requisite number of names, said date being forty-three days prior to the then forthcoming general election. By letter dated September 28, 1972, the Charleston County Election Commission informed Toporek that said Commission, without attempting to validate the petition signatures, had determined that his petition was not timely filed and that Toporek's name would not be placed on the general election ballot.

In Civil Action No. 72–1256, the plaintiff Harper, who is Chairman of the United Citizens Party (hereafter, U.C. P.), a political party of recent vintage in South Carolina, instituted this action, on behalf of, and along with, certain other officials of his party, and along with certain designated nominees of his party, to have candidates placed on the general election ballot for Senate Seats No. 2 and No. 4 in Senate District No. 11, and on said general election ballot for the Allendale County Board of Commissioners. The candidates for the two Senate seats were allegedly nominated at the state convention of the U.C.P. and were certified as such by letter dated September 6, 1972, from the plaintiff Harper to James B. Ellisor, Executive Director of the South Carolina Election Commission. The Allendale County candidates were allegedly nominated at the Allendale County U.C.P. convention held on September 23, 1972, and these nominees were certified to Horace Cone, Chairman of the Allendale County Election Commission by letter from the plaintiff Harper dated September 25, 1972. These U.C.P. candidates were promptly notified by the Election Commissions to which their nominations were sent that their certifications were not timely filed and that their names would not be placed on the respective general election ballots.

In *Toporek* (Civil Action No. 72–1225), the Chairmen of the State and the Charleston County Democratic Par-

ties were granted leave to intervene in said action pursuant to Section 23–400.-72 of the 1962 Code of Laws of South Carolina, as amended, which authorizes the chairman of a political party to institute an action for an injunction prohibiting any person, defeated in that party's primary, from thereafter offering for the same or any other office in an ensuing general election.

The respective election commissions apparently based their rejections of the tendered petition and convention candidates on their interpretations of the following Sections of the Code of Laws of South Carolina, and the amendments thereto enacted by the 1972 General Assembly in regular and special sessions.

*Section 23–264*—(as amended June 1, 1972, by Act 1354): "Provided, that any political party nominating candidates by party convention shall nominate the party candidates and make the nominations public not later than the time for closing the polls on the date of the primary election. . . ."

> *Section 2*—. . . "Candidates nominated by petition.—Other candidates for one or more of such offices shall be placed upon the ballot upon the filing with such officers, commissioners or other authority, as the case may be, not later than 5:00 o'clock p. m. on the day primary elections are held for the same offices. . . No candidate who may be defeated in a party primary shall be placed on the general election ballot by petition or otherwise."

*Section 23–396*—"*Primary election nomination of candidates.*—In the event that a party shall nominate candidates by party primary election, a party primary election shall be held by such party on the second Tuesday in June of each general election year and a second and third primary election each two weeks successively thereafter, if necessary. . . ."

*Section 23–396*—(as amended July 7, 1972 R.1799, S2–79):

> *Section 2*—"In the event a party shall nominate candidates by party primary election, a party primary election shall be held by such party on the last Tuesday in August."

*Section 23–400.72*—". . . I hereby file my notice as a candidate for the nomination as _____ in the primary election to be held on _____. I affiliate with the _____ Party, and I hereby pledge myself to abide by the results of said primary and I authorize the issuance of an injunction upon ex parte application by the party chairman, as provided by law, should I violate this pledge by offering or campaigning in the ensuing general election for election to this office or any other office for which a nominee has been elected in said party primary election, unless the nominee for any such office has become deceased or otherwise disqualified for election in said ensuing general election."

*Section 23–400.15.*—"*Certified candidates nominated by primary or convention to be placed on ballot.*—The nominees in a party primary or party convention held under the provisions of this Title by any political party, certified as such by the State Election Commission under this Title, for one or more of the offices, national, State or circuit, to be voted on in any general election, shall be placed upon the appropriate official ballot for the election as candidates of such party by the officer, commissioners or other authority charged by law with preparing such ballot if the names of such nominees are certified to such officer, commissioners or other authority, as the case may be at least thirty-five days prior to the date of the holding of the election. In case of county or municipal elections, the nominees of any party primary or party convention shall be placed upon the appropri-

ate official ballot for the election as candidates for such party by the officers or commissioners charged by law with preparing such ballots, if the names of nominees in municipal elections are certified to such authority at least fifteen days prior to the date of the holding of the election and if the names of nominees in county elections are certified to such authority at least twenty days prior to the date of the holding of the election."

Section 23–266.—"Substitution when candidate dies or withdraws.—If a party nominee dies, withdraws or otherwise becomes disqualified after his nomination and sufficient time does not remain to hold a convention or primary to fill the vacancy or to nominate a nominee to enter a special election, the respective State or county party executive committee may nominate a nominee for such office, who shall be duly certified by the respective county or State chairman. Provided, that where such a party nominee is unopposed each political party registered with the Secretary of State shall have the privilege of nominating a candidate for the office involved. If the event occurs forty-five days or more prior to the election such nomination must be certified not less than thirty days prior to the election. If the event occurs less than forty-five days prior to the election such office shall not be voted on until the first Tuesday in the month following such election and such nomination must be certified not less than fifteen days prior thereto."

The plaintiffs in these consolidated actions advanced two constitutional grounds in seeking from this court affirmative relief in the form of an Order requiring the names of the candidates who are parties hereto to be placed on the various general election ballots. First, these plaintiffs contend that Section 23–264, as amended by Act 1354, is invalid in that it represents an unconstitutional delegation of power by the South Carolina General Assembly to the South Carolina Democratic Party, which has, for many years, been the only political party in South Carolina nominating all of its candidates by the primary method. This contention is posited on the earlier case of United Citizens Party v. State Election Commission, 319 F.Supp. 784 (D.S.C.1970) in which case a three-judge court held that Section 23–264, prior to its amendment by Act 1354 of the 1972 General Assembly, was an "unconstitutional delegation of power by the South Carolina Legislature to the established private political parties of South Carolina to fix the specific deadline by which the candidates must be nominated and announced." (319 F.Supp., at page 786).

Secondly, the plaintiffs in these actions contended that the statutory requirement that candidates entitled to a ballot position be nominated or announced five months (in 1972, by virtue of R.1799, S2–79 this time period was shortened to two and one-half months) prior to the general election deprives petition candidates and candidates of minority parites equal protection of the law because these dates are arbitrary and capricious, and because they are so far in advance of the general election date that they are calculated to hinder persons from offering for public office, and finally, that there is no compelling state interest to support such a requirement.

The intervenors in Toporek (Civil Action No. 72–1255), the Chairmen of the State and the Charleston County Democratic Parties, asserted on legal and equitable grounds that this plaintiff's name should not be placed on the general election ballot in that he was an unsuccessful candidate in the Charleston County Democratic primary election held on August 29, 1972, for nomination for one of the twelve Charleston County Seats in the South Carolina House of Representatives. When filing his notice as a candidate in that primary, this plaintiff was required to sign the following pledge:

"I hereby pledge myself to abide by the results of said primary, and to sup-

port in the next General Election all candidates nominated in said primary and I authorize the issuance of an injunction upon ex parte application by the party chairman, as provided by law, should I violate this pledge by offering or campaigning for election to *this* office in the ensuing General Election." (emphasis added).

■■ The above oath signed by Toporek varies substantively from the statutory oath prescribed in Section 23–400.-72. Toporek rightfully contended that the oath which he signed did not prohibit him from seeking in the general election any office other than a seat in the State House of Representatives, and since he sought in the general election a seat in the South Carolina State Senate, the oath was inapplicable to him. A more compelling reason for failing to give legal effect to the oath was articulated by the South Carolina Supreme Court in the case of Redfearn v. Board of Canvassers, 234 S.C. 113, 107 S.E.2d 10, in which case the Court held that an oath taken by a voter in a primary election to "abide by the results of said primary and to support in the next general election all candidates nominated in said primary" was merely a moral commitment and did not legally or constitutionally preclude said voter from offering for office as a candidate in a general election against one nominated in the primary. We conclude that such reasoning is equally applicable here.

■ Another obstacle raised to Toporek's candidacy was Section 2 of Act 1354 hereinabove set forth, which Act *specifically states that no candidate defeated in a party primary shall have his name placed on the general election ballot by "petition or otherwise."* (Presumably, "otherwise" meaning by convention). However, such statutory prohibition does not prevent one who is defeated in a convention contest from offering as a petition candidate in an ensuing general election, nor does it prevent *one who is defeated in an earlier*

convention election from participating in a later primary. If there be a valid and rational state interest in prohibiting defeated but recalcitrant candidates from offering in a later general election, this interest is certainly not well served by such irrational treating of like things differently. It is clear to this court that the classification established by Section 2 of Act 1354 discriminates against candidates defeated in a party primary and serves no rational state interest. Since such classification unconstitutionally denies primary candidates equal protection of the law, this provision of Section 2 of Act 1354 is hereby declared invalid and the defendants' reliance thereon is rejected.

Turning to the attack by the plaintiffs in these two suits on Section 23–264 of the 1962 Code (as amended by Act 1354), the defendants initially seek to distinguish the instant case from United Citizens Party v. South Carolina State Election Commission, *supra,* by insisting that Act 1354 remedied the "unconstitutional delegation of power" defect in Section 23–264, reproved by the *U.C.P.* case, in that the date for nomination or announcement was definitely set as the date of the primary, which date is fixed by statute (Section 23–396) as the second Tuesday in June. (Amended, of course, in 1972, to the last Tuesday in August). Prior to amendment, Section 23–264 had set the date for nomination or announcement as the closing date for the filing of primary entries. This date, in turn, was a function of the date selected by a political party for holding its state convention; that is, Section 23–396 provides that when a party decides to select its nominees by a primary, the time for filing for such primary begins the day following the party convention—which convention date was not definitely set by statute—and runs for a period of two weeks. The majority opinion in the earlier *U.C.P.* case held that fixing the date of nomination, for a method other than by a primary, as the *closing date for filing of primary en-*

tries, allowed a political party to determine when non-primary candidates must announce, and this effected an unconstitutional delegation of legislative authority. This court reaffirms and reemphasizes that such a delegation of authority runs counter to state and federal constitutional precepts. The curative legislation (Act 1354), on which the state relies, designates the announcement date for non-primary candidates as the date of the party primary rather than the date for filing for the primary. The purportedly amending act does not, however, explicitly set the second Tuesday in June as the date for announcement, regardless of whether a primary is held. Section 23–396, which establishes the primary date, reads *"in the event that a party shall nominate candidates by party primary election, a party primary election shall be held"* it shall be held on the second Tuesday in June. While Act 1354 certainly remedies the nomadic nature of the announcement date by eliminating reference to the floating "closing date for primary entries", it is still not clear whether a decision by the established political parties in South Carolina not to conduct primaries would eliminate the June filing and bring into effect Section 23–400.15, which Section requires only that candidates for statewide office be certified to the appropriate Election Commission thirty-five days prior to the general election. (Submission twenty days prior to the general election is required for county offices). Thus, as the court in the *U.C.P.* case pointed out, "it is clear that the *sine qua non* of the plaintiffs' failure to meet the statutory time limit . . . was the Democratic Party's decision not to break with tradition and to hold a primary . . ." 319 F.Supp., at page 789.

■ We are constrained by the failure of Act 1354 to remedy the defect in Section 23–264 to again hold, hopefully for the last time, said Section unconstitutional and invalid insofar as the time limitations provided therein are applicable to candidates nominated other than by the primary method.

■ The second ground urged here by the plaintiffs, namely, that a five month period between a required declaration of candidacy and the following general election unconstitutionally discriminates against petition candidates and minority party candidates, while serving no valid state purpose, was expressly left undecided by the court in the earlier *U.C.P.* case. In the interim, however, the United States Supreme Court has had occasion to rule on that question, and in separate rulings, has summarily affirmed one decision by a three-judge court in Ohio that a nine month time interval between the declaration of intent date, and the following general election, in not unreasonable, Sweetenham v. Rhodes, 409 U.S. 942, 93 S.Ct. 282, 34 L.Ed.2d 214 (1972), ruling below 318 F.Supp. 1262 (S.D.Ohio, 1970), and another decision by a three-judge court in Kentucky that a seven month period for such purposes was not unreasonable. Pratt v. Begley, 409 U.S. 943, 93 S.Ct. 282, 34 L.Ed.2d 214 (1972), (ruling below unreported (# 360, D.Ky. Oct. 2, 1970). Based on these affirmances by the United States Supreme Court, it does not appear to this court that the five month period provided by the South Carolina law is, on its face, constitutionally defective.

■ However, there is an illegal discrimination apparent to this court in the interplay of the various statutes which govern the filing date for candidates. Section 23–266 of the South Carolina Code of Laws authorizes a political party to substitute one candidate for a previously nominated candidate if the nominated candidate withdraws or dies prior to the general election. This statute allows a political party to substitute candidates by reconvening its convention or by nomination by that party's state or county executive committee. In the event that substitution is effected, said substituted nominee must be certified no later than thirty days prior to the gen-

eral election.[1] The language of the statute itself, and the realities of petition signature procurement, preclude a petition candidate from availing himself of this section. The obvious effect of this statute is to allow political parties, certified pursuant to Section 23–251 of the South Carolina Code, to meet the filing requirement up until thirty days prior to the general election, whereas petition candidates must meet the deadline five months (two and one-half months in 1972) prior to the general election. As long as Section 23–266 is applied so as to permit this practice of certified political parties nominating "ghost candidates" up to thirty (30) days prior to a general election, petition candidates must be afforded the same opportunity. While the state does have a valid interest in providing a method for the substitution of candidates when the original nominee dies or becomes physically disabled, there is no valid interest, rational or compelling, (Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972)), served by South Carolina's requiring petition candidates to file five months prior to the general election, while allowing certified political parties to circumvent this requirement via the substitution provision of Section 23–266.

While this court is most reluctant to declare a state act unconstitutional, for the reasons heretofore set forth we hold that those provisions of Section 23–264, as amended, of the South Carolina Code of Laws, which establish filing dates for candidates nominated other than by party primary method, are unconstitutional in that they are in violation of the equal protection clause of the Fourteenth Amendment, and, as these provisions unnecessarily burden the right of the citizenry to vote and seek office, they are also unconstitutional because they violate the right of the people to peaceably assemble and petition the government for redress of grievances as guaranteed by the First Amendment.

The other issues in this action, (namely, the question of ballot position and use of party symbols), have become moot insofar as the election of 1972 is concerned. They raise matters that, absent capricious or arbitrary action by the state election authorities, do not pose issues of constitutional dimension. We will not assume in this case, without some evidentiary basis, that in the future the state election officials will act either arbitrarily or capriciously.

Since the pressing time requirement imposed by the date of the filing of this action precluded a lengthy analysis necessitated by the serious questions raised, this court has previously prepared and issued injunctions compelling the state, for the reasons herein enumerated, to grant certain relief outlined therein. A copy of these Orders are appended to this opinion as an appendix and made a part hereof by reference thereto.

## APPENDIX

### ORDER

The above two entitled actions were consolidated and heard together in Columbia, South Carolina, on October 12, 1972, by a United States Court of three Judges, each action having been instituted for the purpose of declaring invalid certain provisions of the election laws of South Carolina, and in each action an injunction is sought to require the placing on the ballot for the general election to be held on November 7, 1972, the name and/or names of the plaintiffs in these two actions. Since time is of the essence, in that the printing of ballots and the preparation of voting machines for the forthcoming general election must be immediately undertaken, the Court is compelled to announce its decision in

---

1. This provision is in conflict with 23–400.15 which requires certification thirty-five days before the general election. This is another incongruence in South Carolina's election law scheme.

this brief form, reserving the right to file an opinion in this case at a later date should such be deemed appropriate. The Court being convinced that the plaintiff and/or plaintiffs in each action are entitled to the following relief, it is

Ordered, that the name of the plaintiff, Robert Toporek, contingent upon his presenting evidence satisfactory to the undersigned Judge by 12:00 o'clock noon on Tuesday, October 17, 1972, that he has complied with the statutory requirement of providing a petition signed by one thousand qualified electors residing in Charleston and Georgetown counties, be placed on the general election ballot for South Carolina Senate Seat No. 1 in Senatorial District No. 16 by the defendants in the above entitled Civil Action No. 72–1225, the Charleston County Election Commission and the Georgetown County Election Commission.

It Is Further Ordered, that the name of the plaintiff, Mordecai C. Johnson, be placed on the general election ballot for South Carolina Senate Seat No. 4 in Senatorial District No. 11 by the defendant in the above entitled Civil Action No. 72–1256, the Marion County Election Commission, and that a copy of this Order be served upon the Florence County Election Commission, the Horry County Election Commission, and the Williamsburg County Election Commission, for appropriate action on their part.

It Is Further Ordered, that the name of the plaintiff, Samuel L. Vandross, be placed on the general election ballot for South Carolina Senate Seat No. 2 in Senatorial District No. 11 by the defendant in the above entitled Civil Action No. 72–1256, the Marion County Election Commission, and that a copy of this Order be served upon the Florence County Election Commission, the Horry County Election Commission, and the Williamsburg County Election Commission, for appropriate action on their part.

It Is Further Ordered, that the names of the plaintiffs, Norman Lofton, Jr., George M. Jefferson, Herbert Lee Peeples, and Ernest Graham, Sr. be placed on the general election ballot for the Allendale County Board of Commissioners by the defendant in the above entitled Civil Action No. 72–1256, the Allendale County Election Commission.

It Is Further Ordered, that jurisdiction be retained by this three-judge court of all issues not resolved by this Order.

The Honorable Clement F. Haynsworth, Jr., Chief Judge for the Fourth Circuit Court of Appeals, and the Honorable Donald Russell, United States Circuit Judge, join in the issuance of this Order and authorize the undersigned United States District Judge to sign for the Court.

Charleston, South Carolina

October 16, 1972

(s)   Sol Blatt, Jr.
United States District Judge

AMENDED ORDER

This court having this date been advised by Joseph S. Mendelsohn, Esquire, Secretary of the Charleston County Election Commission, that the petitions of the plaintiff bear signatures sufficient in number to meet the statutory requirement to qualify him as a candidate, it is

Ordered, that the Order of this court heretofore filed this date in the above entitled action, be, and the same hereby is, amended so that the contingency placed therein on the qualification of the plaintiff is hereby removed, and the Georgetown County Election Commission and the Charleston County Election Commission are hereby directed to place the name of the plaintiff, Robert Toporek, on the general election ballot as a candidate for Senate Seat No. 1 in Senatorial District No. 16.

Charleston, South Carolina

October 16, 1972

(s)   Sol Blatt, Jr.
United States District Judge