**WHIG PARTY OF ALABAMA, an unincorporated political association, John W. Watts, Individually, and as Chairman of the Whig Party of Alabama, and Claude H. Rhea, III, and Charles L. Danzey, qualified electors of the Sixth Congressional District of Alabama, for themselves and all others similarly situated, Plaintiffs,**

v.

**Don SIEGELMAN, Individually and as Secretary of State of the State of Alabama, O. H. Florence, as Probate Judge of Jefferson County, Alabama, Forrest H. (Fob) James, as Governor of the State of Alabama; and the successors in office of each of said officials of the State of Alabama, Defendants.**

Civ. A. No. 80–C–1278–S.

United States District Court,
N. D. Alabama, S. D.

Oct. 9, 1980.

---

David J. Vann, Jack E. Held, Birmingham, Ala., for plaintiffs.

William M. Acker, Jr., Edward S. Allen, Birmingham, Ala., for defendants.

## FINAL ORDER

CLEMON, District Judge.

Based on the accompanying Memorandum Of Opinion, it is hereby ORDERED, ADJUDGED, DECREED, and DECLARED as follows:

1. § 17–7–1(a)(2) of the *Code of Alabama of 1975 as amended*, as applied to

those political parties ineligible to hold primary elections under Alabama law, violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States; and, accordingly the defendants are enjoined from enforcing the said statutory provision against political parties ineligible to hold primary elections under Alabama law in a way that requires such parties to certify their candidates prior to the last date on which any political party eligible to hold a primary election may certify any of its candidates where no contest is filed.

2. The defendant O. H. Florence, as Judge of Probate of Jefferson County, Alabama, is enjoined from failing to place on the November 1980 general election ballot the name of John H. Buchanan under the Whig Party emblem and column as a candidate for the United States Congress from the Sixth Congressional District of Alabama and said defendant Florence and defendant Don Siegelman are enjoined from failing in any respect to treat the said John H. Buchanan as a candidate for that office in such general election.

3. The plaintiffs Claude H. Rhea, III, Charles L. Danzey, and the class they represent shall have and recover nothing of the defendants.

4. Costs of the action are hereby taxed against the defendants, for which let execution issue.

## MEMORANDUM OF OPINION

CLEMON, District Judge.

Under the election laws of Alabama, the Republican and Democratic parties may certify to the Secretary of State their nominees for the general election ballot as late as thirty days prior to the November general election; minor political parties and petitioners for independent candidates are required to certify their nominees by the first Tuesday in September. The Whig Party of Alabama and a certified class of qualified electors raise the pregnant issue of whether this differential treatment of the major and minor parties and independents under Alabama law offends the Fourteenth Amendment to the Constitution of the United States.

The class also challenges § 17–7–1 of the *Code of Alabama of 1975, as amended,* which: (1) precludes as an independent candidate any person who was a candidate in the primary election of that year; and (2) requires that one percent of the registered voters of a county be included on petitions in support of an independent candidate for an office to be voted on by the electors of a county.

This action was filed on September 29, 1980. The verified complaint was accompanied by a motion for temporary injunctive relief, supported by affidavits. Plaintiffs sought a temporary restraining order enjoining the defendant Probate Judge of Jefferson County, Alabama, from printing ballots for the November general election which did not include the name of their candidate for the United States Congress from the Sixth Congressional District of Alabama. The plaintiffs' counsel also filed an affidavit pursuant to FRCP 65(b)(2), attesting to reasonable efforts undertaken by him to give to the defendants notice of the application for emergency relief. After satisfying itself that such efforts had in fact been made, and directing that further contacts be had by plaintiffs' counsel with the defendants and/or their counsel in chambers, the Court set down for hearing the application for a temporary restraining order.

Based on the matters asserted at the hearing, at which the Republican Party appeared and participated, the Court issued a temporary restraining order on the night of the filing of the lawsuit, restraining the Probate Judge of Jefferson County, Alabama, from printing any general election ballots which omitted the name of plaintiffs' candidate pending a hearing on and determination of plaintiffs' motion for a preliminary injunction.

A status conference was held on October 1, 1980, at which counsel for all of the parties appeared and participated.

The preliminary hearing was scheduled and held four days later–October 3, 1980. Pursuant to FRCP 65(a)(2), the Court had previously ordered the trial of the action on the merits to be consolidated with the hearing on the application for a preliminary injunction.

The Court granted permissive intervention to the Republican Party of Alabama under FRCP 24(b)(2); and upon a finding that the Republican Party's participation in the trial of the action would "unduly delay or prejudice the adjudication of the rights of the original parties," it limited the Republican Party's involvement to the submission of briefs and presentation of oral arguments. In effect, though not in words, intervention by the Republican Party was denied in the exercise of the Court's discretion; and the Republican Party was treated as an *amicus curiae.*

The Democratic Party of Alabama's motion to participate in the case as *amicus curiae* was granted, but the Party was denied leave to examine witnesses.

All of defendants and the Republican Party duly filed answers to the complaint.

The case was heard and taken under submission on October 3, 1980.

## FACTS

### The Whig Party

The Whig Party reemerged in 1970 as a political party in Alabama–after a century and a quarter's absence from the political scene in the state.[1] John Watts, Chairman of the reactivated Whig Party of Alabama, unsuccessfully ran for Governor in 1974. Another Whig candidate ran for Secretary of State in 1970 and for the Alabama Public Commission in 1974.

Whig Party leaders apparently decided sometime after the date of the first primary election in 1980 that they wished to nominate John H. Buchanan as their candidate for the United States Congress from Alabama's Sixth Congressional District. Mr. Buchanan, an incumbent Republican Congressman who has served in the position for the past sixteen years, had been defeated in his September 2 primary bid for the Republican party's nomination.

Taking the position that Alabama's election laws permit minor political parties to nominate by caucus as late as the date of the second primary,[2] i. e., September 23, 1980, the Whig Party gave a published notice on September 18, 1980, in a newspaper of general circulation in Jefferson County, of an adjourned meeting to be held on September 23, 1980, "to nominate candidates to be voted in the November 1980, general election." The meeting was duly held and at that meeting John H. Buchanan was nominated as the Whig Party's candidate for the Sixth Congressional District.

On the same day, John Buchanan accepted in writing the Whig Party's nomination. The nomination was filed with the Secretary of State on the following day.

The Secretary of State has refused to certify the Whig Party's Congressional can-

---

1. The Whig Party in Alabama originated around 1830 in opposition to Andrew Jackson's Democratic Party and its power in Alabama. A noted Alabama historian writes:

     The followers of Henry Clay of Kentucky, calling themselves successively Young Republicans, National Republicans and finally Whigs, organized to oppose Old Hickory. This opposition is the most positive and unqualified thing that can be said about them. Generally they stood for nationalism rather than states' rights, tariff rather than free trade, big plantations rather than small farms, and upper class rather than plain people. A large number of able editors were Whig in politics. The greatest strength of the party lay in the Black Belt and the cotton

counties of the Tennessee Valley. Griffith, *Alabama: A Documentary History To 1900,* p. 338.

The heyday of Alabama's Whig Party was the period 1832–1852, when two of the party's candidates were elected to Congress. *Id.,* 338–339. Though former Whigs assumed leadership positions in the post–Reconstruction (1874–1901) government of Alabama, the party was by then defunct as a political party. *Id.,* 496–497.

2. The Whig Party had been notified in May 1980, by the Secretary of State that its Certificate of Nomination of candidates for federal and/or state office must be filed in the office of the Secretary of State "by 5:00 P.M., September 2, 1980."

didate, relying on § 17–7–1(a) of the *Code of Alabama of 1975, as amended*, which provides in pertinent part:

(a) The following persons shall be entitled to have their names printed on the appropriate ballot for the general election . . . (2) All candidates who have been put in nomination by any caucus, convention, mass meeting or other assembly of any political party or faction and certified in writing by the chairman and secretary of the nominating caucus, convention, mass meeting or assembly and filed with . . . the secretary of state . . . on or before 5:00 P.M. on the day of the first primary election.

On the other hand, the Whig Party points to § 17–16–43(b) of the *Code of Alabama of 1975 as amended*, which requires that the nominating meetings of political parties utilizing the caucus or convention method "shall be held on the same date as that set for primary elections or within 90 days preceding such date." It reasons that since primary elections were set for September 2, 1980, (the first primary) and September 23, 1980 (the second or runoff primary), it was entitled under the law to hold its meeting on the date of the second primary. Also, the Whig Party argues that the filing deadline for minor political parties under Alabama law offends the Equal Protection Clause of the Fourteenth Amendment.

The evidence did not establish that the Whig Party cast more than twenty percent (20%) of the votes in any county of Alabama in the 1978 general elections; in fact, there was no showing of Whig candidates for any County or State office in 1978.

### Rhea and Danzey And The Independent Candidacy of John H. Buchanan

Plaintiffs Claude H. Rhea, III and Charles S. Danzey are registered voters residing in the Sixth Congressional District. Both plaintiffs seek to have the name of John H. Buchanan placed on the ballot as an independent candidate.

Mr. Danzey desired to vote for Mr. Buchanan in the Republican primary on September 2; but he also wished to vote for a Democratic United States Senator and Democratic local candidates. Since there was no opposition in the Democratic primary to the party's only declared candidate for the Sixth Congressional District seat, the name of the Democratic candidate did not appear on the ballot. § 17–16–11(c) of the *Code of Alabama of 1975, as amended*. Thus, although the name of Democratic candidate for Congress did not appear on his ballot, Mr. Danzey could only have voted for Mr. Buchanan in the Republican primary by sacrificing his right to vote for a United States Senator and local officials. Mr. Danzey chose not to vote in the Republican primary.

Messrs. Rhea and Danzey represent a certified class of voters in the Sixth Congressional District who have petitioned the Secretary of State to place the name of Mr. Buchanan on the ballot as an independent candidate. They satisfy all of the requirements of FRCP 23(a) and 23(b)(2).[3]

After Mr. Buchanan lost in the primary, Mr. Rhea and other registered voters formed a group "Citizens For Buchanan" for the purpose of exploring various avenues by which Mr. Buchanan's name might be placed on the general election ballot. The group collected, between September 9 and 24, 1980, over 11,400 signatures of registered voters in the Sixth Congressional District, on petitions requesting the Secre-

---

**3.** "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites to subdivision (a) are satisfied, and in addition:

. . . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

tary of State to certify Mr. Buchanan's name as an independent candidate on the general election ballot. These petitions were filed with the Secretary of State on September 25, 1980.

There are 259,157 voters in the Sixth Congressional District of Alabama.

The Secretary of State has refused to certify Mr. Buchanan as an independent candidate for two reasons: (1) a recent modification of Alabama's election laws which bars certification as an independent of a candidate who ran in the primary election during the same year; and (2) the nominating petitions were not filed in the office of the Secretary of State by 5:00 P.M. on the date of the first primary election.

Plaintiffs Rhea, Danzey and their class claim that the filing deadline for independent candidates and the "primary candidate" disqualification deny to them their rights under the Equal Protection Clause of the Fourteenth Amendment.

### Alabama's Election Laws

One treads cautiously on the ground embraced by Alabama's election laws. The defendant Secretary of State has written of them:

> Current law is a hodgepodge of scattered, confusing and oftentimes conflicting provisions. Well–trained and talented attorneys experience difficulty locating (not to mention understanding) relevant provisions.
>
> .    .    .    .    .
>
> Much of the problem is simply that Alabama's election laws are outdated. Many were written in the 1800s; others were incorporated into the 1901 Constitution. Since then, there has been a substantial shift in public attitudes and philosophy. Federal law and court decisions have resulted in sweeping changes in the elections process, but our election laws have not fully adjusted to these changes.

Nonetheless, certain provisions of Alabama's election laws are clear and unambiguous on their face and require no interpretation.

#### (a) Major Political Parties

First, it is clear that only the major political parties may hold primary elections. § 17–16–1 *Code of Alabama of 1975*; § 17–16–4 *Code of Alabama of 1975*. A "political party" is statutorily defined for purposes of primary elections as a party whose members cast more than 20% of the votes in the most recent general election. A "political party" within a county is required to have received more than 20% of the county's votes in the last general election; a state "political party" is required to have received more than 20% of the total state vote in the last general election. § 17–16–2 *Code of Alabama of 1975*; § 17–16–3 *Code of Alabama of 1975*.

Though all Alabama major political parties are entitled to have primary elections and are indeed presumed to have opted for primary elections, they are not required to conduct primary elections. § 17–16–5 *Code of Alabama of 1975; U. S. v. Executive Committee of the Democratic Party,* 254 F.Supp. 537 (S.D.Ala.1966); *Moody v. Gallion,* 286 F.Supp. 653 (M.D.Ala. 1968).

Where a major political party does not, in effect "opt out" of its right to conduct primary elections, such elections must be held on the first Tuesday after the first Monday in September. A second or runoff primary election, where necessary, may be held on the third Tuesday following the first primary election in September. § 17–16–6 *Code of Alabama of 1975, as amended.*[4]

Where a political party holds a primary, its candidate nominated thereby must be filed with the Secretary of State "on the day next following the last day for contesting the primary election for that office if no contest is filed." If a contest is filed, the

---

**4.** This change in the Alabama primary election date from May to September was submitted to the Attorney General of the United States un-

der Section 5 of the Voter Rights Act, 42 U.S.C. § 1973c; and the Attorney General did not interpose any objection to the change.

requisite filing with the Secretary of State must be made "on the day next following the date of settlement or decision of the contest." § 17–7–1 *Code of Alabama of 1975, as amended.*

Contests of primary elections must be made "within 24 hours after the results of the primary election have been declared, weekends excluded."[5] § 17–16–70 *Code of Alabama of 1975, as amended.*

Results of the first primary election are required to be declared by the political party's state executive committee on the next Monday following the first primary election. § 17–16–35 *Code of Alabama of 1975, as amended.* Results of the second primary election likewise must be declared by the Monday of the week following the second primary election. § 17–16–36(d) *Code of Alabama of 1975, as amended.*

Therefore, under State law a major political party which utilizes the primary method of election may certify to the Secretary of State its candidate for the November general election ballot as late as the last Tuesday of September, if the election is uncontested. Where a primary election is contested, the contest must be disposed of at least forty (40) days prior to the November general election; and the Secretary of State must be notified accordingly within ten days after the disposition of the contest has been had. § 17–16–86, *Code of Alabama of 1975.* Effectively then, a contested second primary election may result in the political party's nominee being forwarded to the Secretary of State thirty days before the general election.

The principal legislative concern with filing dates for primary nominees seems to be that their "certificates shall be made so as to get the nominee on the ballots for the general election in November." *Id.* Indeed, where a first or second primary contest cannot be determined by the state executive committee, the committee has "the right and authority to direct a new primary election for the nomination." § 17–16–87

*Code of Alabama of 1975.* The legislature has apparently concluded that if the Secretary of State is in a position to forward to the Probate Judge, within six days after the second primary election (which could be as late as September 29 in a given year) the names of the nominees for office, the Probate Judge will have sufficient time remaining within which to prepare the ballots for the November general election. § 17–7–1(b); § 17–16–40 *Code of Alabama of 1975.*

The state executive committees of the two major political parties are authorized by law to fill vacancies ("by death, resignation, revocation or otherwise") occurring in any of its nominations "either by action of the committee itself or by such other method as the committee may see fit to pursue." § 17–16–41, *Code of Alabama of 1975.* This statutory provision effectively authorizing the major political parties to substitute candidates does not specify a deadline by which such vacancies must be filled.

■ The uncontroverted evidence is that the only political parties in Alabama which may and do in fact hold primary elections are the Democratic and Republican parties. These major political parties may, in lieu of primary elections, opt to nominate candidates by "mass meeting, beat meeting or other meeting of the voters of such party . . . ." Such meetings must "be held on the same date as that set for primary elections or within 90 days preceding such dates." § 17–16–43 *Code of Alabama of 1975, as amended.*

### (b) Independent Candidates

Petitions in support of an independent candidate likewise must be filed with the Secretary of State by 5:00 P.M. on the day of the first primary election. § 17–7–1(a)(3) *Code of Alabama of 1975, as amended.* Such petitions must be signed by at least one percent of the total voters of the county, if the office is to be filled by the

---

**5.** Until last year, contests of primary elections were required to be commenced within fifteen days by candidates for other than county of-

fices. § 17–16–70 *Code of Alabama of 1975, as amended.*

voters of the entire county; or one percent of the voters of the state if the office is to be filled by vote of the entire state. § 17–7–1(a)(3) *Code of Alabama of 1975, as amended.*

By a 1977 legislative enactment, the Probate Judge is barred from "causing to be printed on the ballot the name of any independent candidate who was a candidate in the primary election of that year." § 17–7–1(b) *Code of Alabama of 1975, as amended.* There is no similar ban precluding candidates who unsuccessfully ran in the primary of the Democratic Party from being substituted by the Republican Party as its nominee for the same office in the general election, or vice–versa. There is no similar disqualification of an unsuccessful primary candidate from nomination by a minor political party in the general election–as attested to by the fact that the several defendants do not once challenge the Whig Party's right to nominate Mr. Buchanan on the ground that he was a primary candidate this year.

■ This particular 1977 change in Alabama's election laws was never submitted to the United States Attorney General for his approval, as required by the 1965 Voter Rights Act, 42 U.S.C. § 1973c.[6] Further, there is apparently ample ground for a challenge to this disqualification of independent candidates on state constitutional grounds; as the title of the law does not indicate that the law disqualifies primary candidates from running as independents in the general election.[7] Ala.Const. Art. IV § 45; *Wilkins v. Woolf,* 281 Ala. 693, 208 So.2d 74 (1968); *Clutts v. Jefferson County Board of Zoning Adjustment,* 282 Ala. 204, 210 So.2d 679 (1968); *Ex Parte Pollard,* 40 Ala. 77 (1866); *Alabama G.S.RR. v. Reed,* 124 Ala. 253, 27 So. 18 (1899); *Opinion of the Justices,* 270 Ala. 38, 115 So.2d 464 (1959).

### (c) Minor Political Parties

In addition to the two major political parties, other political parties are also recognized under Alabama election laws. Such parties are defined as

"any other assemblage or organization of electors who nominated candidates in the general election held in November, 1970, or an assemblage or organization of electors not less than 5,000 in number who, on or before March 1 in any year in which a general election is held, shall file a petition to form a political party with the secretary of state, such petition giving the name of the political party, the names of the officers thereof, and the emblem to be used by such party." § 17–7–1(g) *Code of Alabama of 1975.*

A minor political party must file with the Secretary of State its nominees for district and statewide offices on or before 5:00 P.M. on the date of the first primary election. § 17–7–1(a)(2) *Code of Alabama of 1975, as amended.*[8]

---

**6.** The Court directed chief counsel for the defendants Secretary of State and Attorney General (Mr. Lockett) to produce any available documents reflecting approval or non-objection by the United States Attorney General of this change in the law relative to independent candidates. The document produced in response thereto (Court Exhibit One) reflects that the Alabama Attorney General apparently only requested approval by the United States Attorney General of the change in the primary election date. To that limited request, the "Attorney General did not interpose any objection *to the change in question*" (emphasis added). The Alabama Attorney General, a party to this action, and presumably in control of all of the correspondence with the Justice Department related to Act No. 69 of the First Special Session of the 1977 Alabama Legislature, did not provide the Court with any evidence that the said Act No. 69, as enacted by the Legislature, was submitted in its entirety to the United States Attorney General for approval under the Voter Rights Act.

Based on the testimony of the Secretary of State (called by the Court as a witness pursuant to FRE 614[a], [b]), and FRE 803(7), (8), (10), the Court concludes that the 1977 change in the election laws relating to independent candidates was never submitted to the United States Attorney General for his approval.

**7.** This Court will not pass on the validity of the provision under the Alabama Constitution.

**8.** In the case at bar, the Whig Party substantially complied with the provisions of § 17–16–43 of the *Code of Alabama of 1975, as amend-*

The Probate Judge is barred by law from including on the ballot the name of any nominee (whether nominated by primary election, caucus, mass meeting, convention or by independent petition) who notifies the Judge by notarized statement at least twenty days before the general election, that he (the nominee) will not accept the nomination. § 17–8–2 *Code of Alabama of 1975.*

Alabama's election laws permit the "write–in" of candidates whose names are not printed on the ballot. § 17–8–5 *Code of Alabama of 1975.*

A candidate's name, under Alabama law, may appear but one time on the ballot. § 17–8–2 *Code of Alabama of 1975.*

### Discussion

■ In what appears to be the most recent expression of a unanimous United States Supreme Court on the relationship of state ballot access restrictions and the Equal Protection Clause of the Fourteenth Amendment, Justice Marshall noted that such restrictions affect two fundamental rights: the First Amendment right of citizens to associate for the advancement of political beliefs, and the Fifteenth Amendment right of qualified electors, regardless of their political leanings, to cast their votes effectively. He further observed that

"[T]he freedom to associate as a political party, a right we have recognized as fundamental, see *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, at 30–31, 21 L.Ed.2d 24, has diminished practical value if the party can be kept off the ballot. Access restrictions also implicate the right to vote because absent recourse to referendums, 'voters can assert their preferences only through candidates or parties or both.' *Lubin v. Panish,* 415 U.S. 709, 716,

94 S.Ct. 1315, 39 L.Ed.2d 702 (1974). And for reasons too self–evident to warrant amplification here, we have often reiterated that voting is of the most fundamental significance under our constitutional structure. [Citing cases].

When such vital individual rights are at stake, a State must establish that its classification is necessary to serve a compelling interest." *Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979).

At the same time, the Supreme Court in *Socialist Workers, supra,* recognized that the States have a compelling interest in regulating the number of candidates on the ballot.[9] However, the Court emphasized that even when pursuing admittedly compelling state interests, a State may not adopt means that unnecessarily restrict fundamental constitutional rights: the Constitution requires "that states adopt the least drastic means to achieve their ends ... particularly ... where restrictions on access to the ballot are involved." *Id.,* at 185, 99 S.Ct. at 991. With these general principles in mind, the Court turns to a consideration of the issues at bar wherein fundamental constitutional rights of plaintiffs and certain compelling state interests are seemingly on a collision course.

To begin with, there can be no doubt but that the State of Alabama treats the Democratic and Republican parties differently than it treats minor parties and independents with respect to nominee filing deadlines. The major parties alone are entitled to file their nominees with the Secretary of State as late as thirty days prior to the general election. The Alabama Code makes

---

ed. In the Court's view, compliance by the Whig Party with that statutory provision was unnecessary, as the provision governs "political parties" as defined by Chapter 16 of Title 17, *Code of Alabama of 1975.* The Whig Party does not meet the requirement embodied in that definition.

**9.** Justice Marshall quoted from *Lubin v. Panish, supra*:

A procedure inviting or permitting every citizen to present himself to the voters on the

ballot without some means of measuring the seriousness of the candidate's desire and motivation would make rational voter choices more difficult because of the size of the ballot and hence would tend to impede the electoral process. ... The means of testing the seriousness of a given candidacy may be open to debate; the fundamental importance of ballots of reasonable size limited to serious candidates with some prospects of public support is not. *Id.,* at 715, 94 S.Ct. at 1319.

it clear that all minor political parties and petitions for independents must be filed no later than 5:00 P.M. on the date of the first primary election [10]–roughly two months before the general election is held. Only the two major political parties may substitute candidates at anytime prior to the general election; there is no provision in the law for substitution of candidates by minor political parties and petitioners for a designated independent candidate at anytime.[11] Only the two major political parties are entitled to certify their candidates for the November ballot as late as the last Tuesday in September.

The State of Alabama has decidedly classified the major political parties differently than the minor parties and independent candidates.

Moreover, minor parties and petitioners for independent candidates are placed under a substantial political handicap by virtue of the disparate treatment accorded them under Alabama's election laws. At the time when they are forced to declare publicly their nominees, they cannot ascertain the name of their most formidable opposition candidates. This information may well not be revealed to them until nearly half the time remaining in the campaign will have expired; at and subsequent to which time the major parties may, if they so chose, substitute "ghost candidates." In the meanwhile, the already entrenched major political parties are well aware of the minor parties' and independent nominees long before the date by which they (the major parties) are required

to declare their nominees in the office of the Secretary of State.

What state interest, compelling or otherwise, is asserted by the State in defense of this disparate treatment of classified political parties and independents? In reviewing the answer filed and the evidence adduced by the defendants Governor, the Secretary of State, and the Attorney General, one searches in vain for any such state interest.

The defendant Jefferson County Judge of Probate suggests in his answer that the State has compelling interest in receiving the names of all candidates to appear on the ballot within a sufficient time prior to the general election so that the ballots may properly be prepared, printed, placed on voting machines, and said machines delivered to the proper polling places for the general election. Absentee ballots likewise must be prepared and distributed. The evidence offered by the Probate Judge at trial definitely established the compelling interest of the State of Alabama in establishing a deadline by which all nominations must be received by the Secretary of State and forwarded to the Probate Judge of each county.

The amicus Democratic Party of Alabama and the other defendants suggest that the differential treatment of major and minor parties furthers a state interest in preventing a subversion of the primary election process.[12] The intervenor Republican Party also alludes to this state interest, and asserts it to be a compelling interest.

The Democratic Party of Alabama convincingly argues that "[t]he only interest

---

10. As shown hereinbefore at f. 8, the Whig Party's contention that Alabama's election law governing the filings by minor parties is not well founded. § 17–16–43 simply does not apply to political parties other than the Democratic and Republican parties.

11. Indeed, in the unlikely event that the major political parties choose jointly to exercise their option *not* to have primary elections in a given year, Alabama statutory law makes no express provision for the filing by minor political parties and their nominees for various elective offices, as the law is couched in terms of "the day of the first primary," rather than "the first Tuesday in September of the year in which a

general election is to be held." On that ground alone, a similar statutory scheme in South Carolina has been found by a three–judge panel to be constitutionally impermissible. *Toporek v. South Carolina State Election Com'n*, 362 F.Supp. 613 (D.S.C., 1973). This Court reaches the same conclusion with respect to the Alabama's primary election scheme.

12. Significantly, the Democratic Party does not urge this interest as a compelling one. In view of the statutory scheme which does not make the primary election method compulsory for even the major parties, the Court is of the view that the asserted interest is not compelling.

the state has in these [minor] parties is in setting a deadline for their nomination."

The Court agrees that the State of Alabama has a compelling interest in setting deadlines for nominations by political parties and of independent candidates, so that general election ballots can be properly and timely prepared and distributed. However, this recognition does not close the door to any further judicial scrutiny of the disparate treatment.

Rather, the relevant inquiry must now focus on whether there exist any less drastic alternatives by which to further the state's compelling interest. With respect to third parties, the existence of less discriminatory alternatives is best reflected by an examination of the various other deadlines presently imposed by Alabama election laws.

The Secretary of State is required to certify to the Probate Judges the names of the nominated candidates *six days after the date of the second primary election.* This year, for example, the Secretary of State was required to certify to the Probate Judges the names of the candidates by September 29 for a November 4 general election. The law further provides that *a nominated candidate may decline or be removed and be substituted by a major political party as late as twenty days before the election.*

Under these circumstances, "the disparate treatment [of the minor political parties] bears no rational relationship to any state interest", *Socialist Workers,* concurring opinion of Justice Rehnquist, supra, 440 U.S. at 191, 99 S.Ct. at 994. Just as the Supreme Court in *Socialist Workers* found the significantly higher signature requirements for new political parties and independ-

dent candidates in Chicago than such requirements in Illinois generally were "plainly not the least restrictive means of protecting the state's objectives," here the significantly earlier filing deadline for minor political parties serves no valid state interest. *Salera v. Tucker,* 399 F.Supp. 1258 (E.D.Pa. 1975), *aff'd summarily,* 424 U.S. 959, 96 S.Ct. 1451, 47 L.Ed.2d 727 (1976); *American Party v. Jernigan,* 424 F.Supp. 943 (E.D. Ark.1977); *Bradley v. Mandel,* 449 F.Supp. 983 (D.Md.1978); *McCarthy v. Kirkpatrick,* 420 F.Supp. 366 (W.D.Mo.1976).

The state's interest in fixed deadlines for candidates of all political parties is equally well served by requiring that the names of all such candidates be filed six days after the date set by law for the second primary elections or thirty days prior to the general election. Under either deadline, the Probate Judges of the various counties are granted sufficient time within which to prepare and distribute the ballots for the upcoming general election. Cf. *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1971).

Because this Court concludes that the filing deadline for nominees of minor parties implicates fundamental constitutional rights of such parties, and the filing deadline for minor parties is neither the least restrictive means of furthering the compelling interest of the State of Alabama in a filing deadline for candidates of all political parties, nor is it rationally related to any constitutionally permissible goal of the State, the filing deadline for minor parties will be declared an unconstitutional burden and the defendants are to be enjoined from its use to disqualify candidates of minor political parties.[13]

13. This now–invalidated statutory change in the filing deadlines was also embodied in Act No. 69 of the First Special Session of the 1977 Alabama Legislature. See p. 1202 and f. 6, *supra.* Again, this change in voting procedures was not submitted to the United States Attorney General for approval. However, had the Court set aside this 1977 change for want of compliance with the Voter Rights Act, the prior law (which required political parties not utiliz-

ing the primary method to file the names of their candidates with the Secretary of State at least *sixty (60) days* prior to the election) would be effective. § 17–7–1(b) *Code of Alabama of 1975.* The Court concludes, for the reasons set forth in the above discussion, that the prior 60–day deadline was similarly violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

■ The filing deadline for independent candidates stands on a different footing. The State of Alabama has a compelling interest in "insuring the purity of the ballot box"–in requiring a preliminary showing of "a significant modicum of support" before printing the name of an independent candidate on the ballot. Moreover, the state has a strong interest in protecting the integrity of its political processes from fraudulent candidacies. *Jenness v. Fortson*, 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971); *Bullock v. Carter*, 405 U.S. 134, 145, 92 S.Ct. 849, 857, 31 L.Ed.2d 92 (1972); *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); *Dunn v. Blumstein, supra.*

Obviously, situations may arise in which the validity of signatures on the petitions for an independent candidate may be suspect. In order to verify the authenticity of such signatures and the status of the petitioners as registered voters *vel non*, several days or weeks (in the case of a statewide office) may be required by the Secretary of State. Existing Alabama law gives the Secretary of State anywhere from three to four weeks within which to investigate and determine whether the independent candidacy petitions filed in his office are in fact supported by the requisite number and per-

cent of qualified voters in the county or state.

Plaintiffs offered no evidence that substantially less time is in fact required to investigate and determine the factual and legal sufficiency of the petitions. They offered and suggested no less onerous alternatives by which the State of Alabama may meet its compelling interest in protecting the ballot box from candidates who would otherwise be placed thereon by fraudulent or other legally insufficient petitions.

Therefore, the deadline by which petitions in support of independent candidates must be filed with the Secretary of State, as embodied in § 17–7–1(a)(3) *Code of Alabama of 1975, as amended*, passes muster under the Equal Protection Clause of the Fourteenth Amendment.[14] *American Party of Texas v. White*, 415 U.S. 767, 787, n. 18, 94 S.Ct. 1296, 1309, 39 L.Ed.2d 744 (1974);[15] *Dunn v. Blumstein, supra;*[16] *Oregon v. Mitchell*, 400 U.S. 112, 238, 91 S.Ct. 260, 321, 27 L.Ed.2d 272 (1970); 42 U.S.C. Section 1973aa–1(a)(6).

Because the certified class herein did not timely file with the Secretary of State its petitions in support of the independent candidacy of John Buchanan, its claims must be dismissed.[17]

---

**14.** In dismissing the class claims, the Court is not unmindful of *Toporek v. South Carolina State Election Com'n*, 362 F.Supp. 613 (D.S.C.,1973). See footnote 11, *supra.* Under the invalidated South Carolina statute involved in *Toporek*, the filing deadline requirement for petition or independent candidates was five months prior to the general election, while certified political parties could substitute their candidates up to thirty days prior to the general election. *Toporek* did not consider the compelling state interest in insuring the ballot box against fraud; and its continuing vitality with respect to independent candidacy requirements has been undermined by supervening decisions of the United States Supreme Court. *Storer v. Brown, supra; American Party of Texas v. White, supra.* Moreover, the two month Alabama requirement is substantially different from the five month South Carolina requirement.

**15.** "We agree with the District Court that some cutoff period is necessary for the Secretary of State to verify the validity of signatures on the

petitions, to print the ballots, and, if necessary, to litigate any challenges."

**16.** In this case, the United States Supreme Court noted that "30 days appears to be an ample period of time for the State to complete whatever administrative tasks are necessary to prevent fraud--and a year, or three months, too much." 405 U.S. 330, 348, 92 S.Ct. 995, 1006, 31 L.Ed.2d 274.

**17.** (a) The class does not present a justiciable controversy regarding the issue of the "one percent of qualified voters in the county" requirement, since its petitions filed with the Secretary of State far exceeded this requirement.

(b) The Court does not reach the class claim of a constitutional infirmity in the statutory disqualification of an unsuccessful primary candidate from later being placed on the ballot as an independent candidate. But see *American Party of Texas v. White, supra; Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); *Webster v. Mesa*, 521 F.2d 442 (9th Cir. 1975).

(c) Also see the earlier discussion herein under footnote 6.

## CONCLUSION

For the reasons stated herein, the defendants shall be enjoined from enforcing or otherwise complying with § 17–7–1(a) of the *Code of Alabama of 1975, as amended,* with respect to minor political parties in Alabama; and the defendant O. H. Florence as Probate Judge of Jefferson County, Alabama, shall be enjoined from failing to place on the general election ballot the name of John H. Buchanan as the candidate of the Whig Party for the Sixth Congressional District of Alabama; and the defendants O. H. Florence and Don Siegelman shall be enjoined from failing in any respect to treat John H. Buchanan as a candidate for that office in the general election.

All other relief sought by the plaintiffs will be denied.